```
         IN THE UNITED STATES DISTRICT COURT
      FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

  v.                              **CRIMINAL NO. 2:23CR08**
                                             **(KLEEH)**

**ETHAN D. DELAUDER,**

        **Defendant.**

**MEMORANDUM OPINION AND ORDER DENYING
MOTION TO DISMISS INDICTMENT [ECF NO. 22]**

On July 7, 2023, the defendant, Ethan Delauder ("Delauder") filed a motion to dismiss the Indictment [ECF No. 22]. The Government timely responded in opposition. ECF No. 28. The motion is fully briefed and ripe for decision.

**I.  BACKGROUND**

On May 2, 2023, the grand jury indicted Delauder on two firearm counts, charging him with (1) unlawfully possessing a firearm as a convicted domestic violence misdemeanant, in violation of 18 U.S.C. §§ 922(g)(9) and 924(a)(2), and (2) unlawfully possessing an unregistered firearm, in violation of 26 U.S.C. §§ 5861(d) and 5871. ECF No. 1. § 922(g)(9) applies to Delauder because he was convicted of Domestic Battery in the Magistrate Court of Barbour County, West Virginia (case number 17-M01M-00264), in March 2018. Id. A forfeiture allegation pursuant to the Gun Control Act and National Firearms Act was included in

**MEMORANDUM OPINION AND ORDER DENYING**
**MOTION TO DISMISS INDICTMENT [ECF NO. 22]**

the Indictment. Id.

Delauder filed the pending motion to dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Criminal Procedure and argues that § 922(g)(9) impedes his right to keep and bear arms, thereby violating the Second Amendment to the United States Constitution. Id. Citing New York State Rifle & Pistol Association, Inc. v. Bruen, 142 S. Ct. 2111 (2022), Delauder argues that 18 U.S.C. § 922(g)(9) and 26 U.S.C. § 5861(d) are both facially unconstitutional, and unconstitutional as applied to him, as the statutes are inconsistent with the Nation's historical tradition. ECF No. 22.

The Government responded in opposition asserting that, because Delauder is not a law-abiding citizen, and is instead a domestic violence misdemeanant, § 922(g)(9) is constitutional as applied to him. ECF No. 28. Likewise, there is long-standing history in the United States of disarming violent criminals. Id. Additionally, § 5861(d) is constitutional because the Second Amendment does not protect possession of an unregistered firearm, particularly an unregistered sawed-off shotgun. Id. For the reasons that follow, the Court agrees with the Government and **DENIES** Delauder's motion to dismiss.

II. DISCUSSION

It is well-known that "[f]irearms and domestic strife are a

**MEMORANDUM OPINION AND ORDER DENYING**
**MOTION TO DISMISS INDICTMENT [ECF NO. 22]**

potentially deadly combination nationwide." United States v. Hayes, 555 U.S. 415, 427 (2009); see also United States v. Castleman, 572 U.S. 157, 159 (2014) (annually, "[t]his country witnesses more than a million acts of domestic violence."). "[A]ll too often, . . . the only difference between a battered woman and a dead woman is the presence of a gun." Castleman, 572 U.S. at 160. Congress enacted 18 U.S.C. § 922(g)(9) to "close a dangerous loophole" in gun regulations in hopes of preventing such escalated domestic violence. Id. (brackets and citation omitted). Despite § 922(g)(9)'s legislative history and purpose, and the harmony with which it aligns with our Second Amendment to the United States Constitution, Delauder requests this Court find § 922(g)(9) unconstitutional.

**A. The Constitutional Challenge to 18 U.S.C. § 922(g)(9) as a Non-Law-Abiding Citizen.**

"A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In District of Columbia v. Heller, 544 U.S. 570 (2008), the Supreme Court of the United States recognized that the Second Amendment codified a pre-existing "right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense." Bruen, 142 S. Ct. at 2122 (citing Heller, 544 U.S. 570). It then set forth a two-step

framework for assessing Second Amendment claims that combined a historical analysis with means-end scrutiny. See United States v. Pruess, 703 F.3d 242, 245 (4th Cir. 2012) (citing Heller, 544 U.S. at 680).

In Bruen, the Supreme Court further recognized "that ordinary, **law-abiding** citizens have a similar right to carry handguns publicly for their self-defense." 142 S. Ct. at 2122 (emphasis added). The regulation at issue in this case, § 922(g)(9), makes it "unlawful for any person . . . who has been convicted in any court of a misdemeanor crime of violence" to "possess in or affecting commerce, any firearm or ammunition." Delauder leaps over the first issue: that he is not a law-abiding citizen whom the Second Amendment protects. In Bruen, the Supreme Court emphasized that the petitioners were "two ordinary, law-abiding, adult citizens," making them "part of 'the people' whom the Second Amendment protects." 142 S. Ct. at 2119. "Like most rights, the right secured by the Second Amendment is not unlimited. From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose . . . ." Heller, 554 U.S. at 626. Accordingly, Second Amendment protections "end[] at the feet of those individuals who are not law-abiding citizens." United States v.

**MEMORANDUM OPINION AND ORDER DENYING**
**MOTION TO DISMISS INDICTMENT [ECF NO. 22]**

Coleman, No. 3:22-CR-8-2, 2023 WL 122401, at *2 (N.D.W. Va. Jan. 6, 2023).

This Court takes nothing proclaimed in Bruen to question the constitutionality of domestic violence misdemeanant disarmament laws, or the law as applied to Delauder. Despite Delauder's argument, Bruen did not call into question the constitutionality of this regulation. Rather, the Supreme Court has emphasized that "a variety of gun regulations" do not violate the Second Amendment. Bruen, 142 S. Ct. at 2162 (Kavanaugh, J. concurring). Of course, the Supreme Court has also repeatedly recognized that felon in possession prohibitions do not violate the Second Amendment. In Heller, the Supreme Court cautioned that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons. . ." and noted that such regulations are "presumptively lawful." Id. at 626. The Supreme Court reiterated this point in both McDonald v. City of Chicago, 561 U.S. 742, 786 (2010) and Bruen, 142 S. Ct. at 2119.

**B. Our Nation's Historic Tradition in Disarming Violent Citizens.**

Importantly, Bruen also instructed that, for a firearm regulation to satisfy the requirements of the Second Amendment, "the government must demonstrate that the regulation is consistent with the Nation's historic tradition of firearm regulation. Only

**MEMORANDUM OPINION AND ORDER DENYING**
**MOTION TO DISMISS INDICTMENT [ECF NO. 22]**

if a firearm regulation is consistent with the Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" Id. at 2126.  As Heller also focused on the Nation's traditional understanding of the Second Amendment, this was not a novel pronouncement. See id. at 2131 ("The test that we set forth in Heller and apply today requires courts to assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding.").

"Although its meaning is fixed according to the understandings of those who ratified it, the Constitution can, and must, apply to circumstances beyond those the Founders specifically anticipated." Bruen, 142 S. Ct. at 2132 (internal citation omitted).  Indeed, courts are instructed to use analogies to "historical regulations of 'sensitive places' to determine that modern regulations prohibiting the carry of firearms in *new* and analogous sensitive places are constitutionally permissible." Id. (emphases in original).

"[M]ost scholars of the Second Amendment agree that the right to bear arms was tied to the concept of a virtuous citizenry and that, accordingly, the government could disarm 'unvirtuous citizens.'" United States v. Carpio-Leon, 701 F.3d 974, 979 (4th Cir. 2012) (internal citations omitted).  Indeed, "[c]olonial

**MEMORANDUM OPINION AND ORDER DENYING**
**MOTION TO DISMISS INDICTMENT [ECF NO. 22]**

governments often barred 'potential subversives' from owning firearms." Id. (citing Joyce Lee Malcolm, To Keep and Bear Arms: The Origins of an Anglo-American Right 140-41 (1994)).

Traditional surety laws are analogous to the important government objective met by § 922(g)(9). The Government points to the English common-law system which provided spouses protection from violent husbands with a surety. King v. Lord Lee, 83 Eng. Rep. 482 (K.B. ca. 1675). "[F]ounding-era legislatures categorically disarmed groups whom they judged to be a threat to the public safety." Kanter v. Barr, 919 F.3d 437, 458 (7th Cir. 2019) (Barret, J. dissenting) abrogated by Bruen, 142 S. Ct. 2111 (2022). Although domestic violence crimes may not have been historically penalized like other crimes prior to the 20th century, "[t]he absence of stronger laws may reflect the fact that the group most impacted by domestic violence lacked access to political institutions, rather than a considered judgment about the importance or seriousness of the issue." United State v. Nutter, 624 F.Supp.3d 636, 641 (S.D.W. Va. 2022) (Berger, J.).

The Fourth Circuit previously summarized:

> (1) domestic violence is a serious problem in the United States; (2) the rate of recidivism among domestic violence misdemeanants is substantial; (3) the use of firearms in connection with domestic violence is all too common; (4) the use of firearms in connection with domestic violence increases the risk of

> injury or homicide during a domestic violence incident; and (5) the use of firearms in connection with domestic violence often leads to injury or homicide.

United States v. Staten, 666 F.3d 154, 167 (4th Cir. 2011). "Placed in the wrong hands, firearms present a grave threat to public safety, and for this reason, the Anglo-American right to bear arms has always recognized and accommodated limitations for persons perceived to be dangerous." United States v. Carter, 669 F.3d 411, 415 (4th Cir. 2012) (declining to find 18 U.S.C. § 922(g)(3) unconstitutional on its face).

Based on this precedent, the Court easily concludes that § 922(g)(9)'s domestic-violent misdemeanant in possession prohibition is consistent with this Nation's history and tradition, and the "purpose[] of the Second Amendment and [is] designed to keep firearms away from dangerous people." Nutter, 624 F.Supp.3d at 643. Delauder was previously convicted of Domestic Battery in the Magistrate Court of Barbour County, West Virginia (case number 17-M01M-00264), a misdemeanor domestic violence crime. As a convicted misdemeanant for a crime of domestic violence, Delauder is not an ordinary, law-abiding citizen and is not part of "the people" whom the Second Amendment protects. He therefore is not entitled to possess a firearm and § 922(g) is not unconstitutional as applied to him. The Court **DENIES** his motion

to dismiss the Indictment [ECF No. 22] on this ground.

### C. The Constitutional Challenge to 26 U.S.C. § 5861(d) When Possessing an Unregistered Sawed-Off Shotgun.

First, the Court must determine whether the Second Amendment protects a right to bear a "shotgun having a barrel of less than eighteen inches in length," also known as a sawed-off shotgun. United States v. Miller, 307 U.S. 174, 178 (1939). In utilizing the Bruen standard outlined above, and in relying upon well-established precedent, the Court finds it does not.

It remains undisturbed since 1939 that

> [i]n the absence of any evidence tending to show that possession or use of a 'shotgun having a barrel of less than eighteen inches in length' at this time has some reasonable relationship to the preservation or efficiency of a well regulated militia, we cannot say that the Second Amendment guarantees the right to keep and bear such an instrument.

Miller, 307 U.S. at 178 (internal quotation and citation omitted). Indeed, there is a "historical tradition of prohibiting the carrying of dangerous and unusual weapons that the Second Amendment protects the possession and use of weapons that are in common use at the time." Bruen, 142 S. Ct. at 2128 (internal quotations omitted) (citing Miller, 307 U.S. at 179).

The National Firearm Act ("NFA") codified the requirement to register firearms and does not trample the protections of the Second Amendment. 26 U.S.C. § 5861(d). Under § 5861(d), it is

"unlawful for any person . . . to receive or possess are firearm which is not registered to him in the National Firearms Registration and Transfer Record." Nothing in <u>Bruen</u> criticized the NFA's registration requirements; in fact, the Supreme Court stated its endorsement of such licensing requirements. <u>Bruen</u>, 142 S. Ct. at 2161-62 (Kavanaugh, J. concurring). It is clear Delauder's conduct, possessing an unregistered sawed-off shotgun as barred by <u>Miller</u>, § 5861(d) and its penal counterpart 26 U.S.C. § 5871, is not protected by the Second Amendment. Delauder's motion to dismiss is **DENIED**. ECF No. 22.

### III. CONCLUSION

For these reasons, Delauder's motion to dismiss indictment is **DENIED**. ECF No. 22. Delauder remains scheduled for a pretrial conference on September 5, 2023, and jury trial September 12, 2023.

It is so **ORDERED**.

The Clerk shall transmit copies of this Memorandum Opinion and Order to counsel of record and all appropriate agencies.

**DATED:**     August 31, 2023

*[signature: Tom S Kleeh]*

THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA